■ GEOFFREY S. BANHAM, Appellant, v MORGAN STANLEY & Co. INCORPORATED, Respondent.—Order, Supreme Court, New York County (Elliott Wilk, J.), entered March 12, 1991, granting defendant's motion to dismiss the complaint on a defense of documentary evidence, and simultaneously denying (albeit *sub silentio* as moot) plaintiff's cross-motion for discovery, unanimously reversed on the law, the facts, and in the exercise of discretion, the motion is denied and the cross-motion is granted, without costs.

In 1983 plaintiff went to work as a Eurobond trader for British-based Morgan Stanley International ("MSI"), a subsidiary of the multinational investment conglomerate, Morgan Stanley Group Inc. ("MSG"). At least three of MSG's direct subsidiaries are identified in the record: Morgan Stanley & Co. Incorporated (defendant herein), Morgan Stanley International Incorporated ("MSII"), and Morgan Stanley Market Products Inc. A British subsidiary of MSII, Morgan Stanley UK Holdings PLC, was in turn the parent of MSI—this according to defendant's affiant, an MSI director. In the MSG corporate scheme, the New York-based defendant was thus a "great uncle" of plaintiff's British employer, MSI, as the following chart makes clear:

In April 1984, plaintiff and defendant allegedly entered into a "service agreement" in the form of a discretionary bonus compensation plan in lieu of salary. In 1986 and 1987 plaintiff executed agreements with MSI by which he deferred up to $130,000 in bonus payments until 1993. Then in 1989 he was summarily discharged from employment, and denied the deferred bonuses on the ground that they were "discretionary" payments.

Plaintiff commenced this action in 1990 against the New York-based defendant, alleging breach of his various service and compensation agreements. Defendant moved to dismiss based upon documentary evidence that the wrong party was being sued (CPLR 3211 [a] [1]), as well as failure to state a cause of action (CPLR 3211 [a] [7]). The supporting affidavit averred that plaintiff was at all times an employee of MSI, that he had been discharged for cause, that there was no evidence that plaintiff's service agreement with defendant had ever been signed (plaintiff was able to produce only an unsigned copy), and that defendant and MSI were "wholly separate and distinct entities", with defendant exercising no control, ownership or direction over MSI or its operations. Plaintiff cross-moved for further discovery in an effort to establish that he had indeed proceeded against a proper party defendant (CPLR 3211 [d]).

The IAS court ruled that plaintiff, having "sued the wrong subsidiary", had failed to rebut defendant's "documented status as an entity separate and distinct from" MSI. That reasoning ignores the principle that a party seeking additional

discovery for resolution of what is, in effect, a complex in personam jurisdictional issue need not meet the standard of establishing a prima facie case; rather, the party need only convince the court that facts " 'may exist' " to defeat the dismissal motion, in order to warrant discovery on the issue *(National Union Fire Ins. Co. v Ideal Mut. Ins. Co.,* 122 AD2d 630, 633), especially where the corporate relationships are complex *(Jacobson v Princess Hotels Intl.,* 101 AD2d 757), and where the relevant facts are exclusively within the control of the party seeking dismissal of the action *(Peterson v Spartan Indus.,* 33 NY2d 463).

The IAS court was obviously persuaded by the affidavit of J. Steven W. Ward in concluding that there was insufficient evidence of an "interlocking relationship" between defendant and MSI. We note, however, that Mr. Ward, who was plaintiff's supervisor at MSI, and who identifies himself as a Managing Director of that company, is also listed in the MSG annual report for 1989 as a Managing Director of defendant. This alone should have warranted further discovery on the possibility that facts may exist to confirm defendant's rightful status as a party to this action.

Furthermore, a triable issue is raised by plaintiff's argument that defendant actually executed and delivered the service agreement to him, but that he has lost the signed copy. His inability to produce it now does not foreclose proof of its existence and reliance thereon at trial. Ward would have had no personal knowledge of that agreement, in any event, because by his own account, he did not arrive on the scene until July 1984, three months after its execution. Concur— Sullivan, J. P., Wallach, Smith and Rubin, JJ.